**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | |
| | * | |
| **v.** | * | |
| | * | **Case No.  8:13-cr-0496-RWT-02** |
| **JUAN ALBERTO ORTIZ-ORELLANA** | * | |
| **Defendant.** | * | |

**\*\*\*\*\*\*\***

**DEFENDANT'S MEMORANDUM REGARDING
RE-SENTENCING**

Juan Ortiz-Orellana, by his undersigned counsel, hereby submits the following memorandum in support of his upcoming sentencing after remand on Count 10 of the Fourth Superseding Indictment, which charged him with a violation of 18 U.S.C. § 924(j), death resulting from the use of a firearm in relation to a crime of violence.

Mr.  Ortiz-Orellana agrees with the United States that a concurrent sentence on this count is a reasonable sentence that complies with all the purposes of sentencing as required by 18  U.S.C. § 3553(a).  In light of all the circumstances in this case, however, Mr.  Ortiz-Orellana disagrees that the Court should impose another term of life-imprisonment for the § 924(j) offense.  Another life sentence, even if concurrent, is "greater than necessary" in contravention of the parsimony principle set out in 18  U.S.C. § 3553(a), which provides that this Honorable Court "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing set out in § 3553(a)(2).  Mr.  Ortiz-Orellana is first-time offender, all the offenses relate to a single murder involving a single victim, and while the offenses are serious the underlying murder was not unusually heinous, cruel or brutal.

## BACKGROUND

A.      **Fourth Circuit Remand of 18  U.S.C. § 924(j)**.

> Ortiz's § 924 (c) and § 924(j) punishment was based on the same victim.  Therefore, as the government agrees, the proper remedy pursuant to *Palacios* [982 F.3d 920, 924-925 (4th Cir. 2020)], is to dismiss Count 9.
>
> In addition, the Supreme Court recently held that a sentence under § 924(j) can be imposed concurrently or consecutively. *Lora v. United States*, 599 U.S. 453 (2023). Therefore, the district court was mistaken in believing it was required to impose a life sentence on Count 10 consecutive of Counts 1, 7, and 8.  The government does not contest this point.  We therefore vacate Ortiz's consecutive sentence on Count 10 and remand to the district court for resentencing.

*United States v. Ortiz-Orellana*, 90 F.4th 689, 705-06 (4th Cir. 2024), *cert. denied*, 145 S. Ct. 1890

(2025).

B.      **Fourth Circuit Affirmed Two Concurrent Life Sentences on Other Counts**

Mr. Ortiz-Orellana stands before the Court serving two life sentences plus 7 years imprisonment, all running concurrently, for convictions and sentences that are final, having been affirmed by the Fourth Circuit with the Supreme Court denying *certiorari.  Id.*

Count 1:  RICO conspiracy, 18  U.S.C. § 1962(d), life sentence.
Count 7:  Conspiracy to commit RICO murder, 18  U.S.C. § 1959(a)(5), 7 years.
Count 8: Murder in aid of racketeering, 18 U.S.C. § 1959(a)(1), life sentence.

C.      **Nature and Circumstances of the 18  U.S.C. § 924(j) Offense**

Count 10 charges a violation of 18  U.S.C. § 924(j), death resulting from use of a firearm. As the Fourth Circuit noted in vacating the § 924(c) offense, the charged offenses are "based on the same conduct" – the murder of a single victim.  *Ortiz-Orellana,* 90 F. 4th at 705.  The crime underlying the entire prosecution was the murder of a single victim.  While murder is a serious crime,

2

there was no unusually heinous, cruel, or brutal conduct, no torture or gratuitous infliction of injury. *Compare* U.S.S.G. § 5K2.9 (extreme conduct upward departure).[1]

Imposing yet another life sentence, even if concurrent, on Mr. Ortiz-Orellana, who is already serving two concurrent life sentences is "greater, than necessary" to impose just punishment. Indeed, while the Fourth Circuit has rejected a double jeopardy argument relating to a VICAR and 924(j) convictions, *see United States v. Devine,* 40 F.4th 139, 152 (4th Cir. 2022), in a recent case the 11th Circuit case noted that the United States conceded that a sentence for VICAR and 924(j) merged on double jeopardy grounds. *See United States v. Green*, 158 F.4th 1347, 1375 (11th Cir. 2025), cert. denied, 2026 WL 490746 (2026).[2]

---

[1] While § 5K2.9 was deleted by the United States Sentencing Commission, effective November 1, 2025 (amendment 836), it was in effect at the time of Mr. Ortiz-Orellana's sentencing in 2016.

[2] In *Devine,* 40 F.4th at 152, the Fourth Circuit held that there is no double jeopardy bar to a prosecution for RICO conspiracy, VICAR murder and a firearms murder when the offenses arise out of the same course of conduct. *See* also *Ortiz-Orellana*, 90 F.4th at 705 ("Ortiz's RICO and VICAR convictions do not violate the Double Jeopardy Clause").

In *Green,* the Eleventh Circuit noted the parties' agreement that the VICAR and 924(j) punishment merged:

> When a district court encounters what would be a double jeopardy violation, it must "exercise its discretion to vacate one of the underlying convictions. Here, *all parties agreed that Chambers could not be convicted of both count four (use of the firearm to cause the death of another person) and count two (VICAR murder).* The government asked the district court to resolve this double jeopardy issue by vacating Chambers's conviction on count four and sentencing him on count two, which carried a mandatory life sentence.

*Green,* 40 F.4th at 152 (emphasis added, internal citations omitted).

3

Moreover, while the jury convicted Ortiz-Orellana of a RICO conspiracy, the jury explicitly found that Mr. Ortiz-Orellana did not join in a pattern of racketeering activity involving robbery, extortion, retaliation against or tampering with witnesses, victims or informants alleged in the Fourth Superseding Indictment against him and others. *See* Jury Verdict Form, ECF 403 at 4. The entirety of his involvement in the RICO conspiracy involved the single murder and conspiracy to commit that single murder.

In its sentencing memorandum, the government overstates Mr. Ortiz-Orellana's conduct. Gov Memo (ECF 768 at 3-4). Under the government theory of the case, Ortiz-Orellana was a follower, not a leader of the decision to murder the victim. Under the government's theory at trial, others were the driving force behind the decision to seek retribution against the victim, who was known to others as a member of a rival gang. Indeed, throughout the alleged planning of the murder, the leader of the MS-13 clique was a government informant. The government's claim that Ortiz-Orellana made an earlier trip to the victim's home with machetes was wholly impeached and unreliable. For one, the government failed to call the witness who allegedly drove the defendants to the victim's home – the leader of the clique and a government informant at the time. Instead, it called a different witness whose testimony was impeached as he described visiting Ortiz-Orellana's single family home to pick up machetes when in fact, Ortiz-Orellana lived in an apartment. The government also failed to present cell-site data or other tangible evidence for this alleged trip. Its claim that Ortiz-Orellana "stalked" the victim refers to a single incident just an hour before the murder, when the government alleged that Ortiz-Orellana and codefendant Moreno-Aguilar entered a laundromat for a few moments while the victim was folding his clothes in the establishment. The covert audio recording was instigated by the very clique leader, who could have prevented the murder or alerted the government

4

that it was being planned. In sum, Mr. Ortiz-Orellana did not instigate the murder and most importantly he is already serving a harsh sentence – two concurrent terms of life imprisonment, a term that is not subject to good-time credit or other sentence reductions.

**D.      Mr. Ortiz-Orellana is a First Time Offender With Other Mitigating Circumstances**

These offenses were Mr. Ortiz-Orellana's first offenses. At the time, he had a steady work history at a local car wash and a stable family life. He grew up in an impoverished but intact and hard-working family of six children in El Salvador. He himself has worked since he was a 10-year-old child, at first in shoe shops and later in the small bakery run by his mother. At age 18, he married and had two children a girl, who is now 21 years old and a boy who is a teenager. In 2010, he left his wife and children behind and came to the United States to join his parents and siblings in an effort to better his family's financial circumstances. The day after his arrival in the United States he began working at the carwash or his father has worked for years. While in the United States, although he continued to send money home for his children, he and his wife grew apart and he met and fell in love with another woman. He had a child from that union, who is now 14 years old. On his days off at the car wash he took care of his young child, from the time she was an infant until he was incarcerated, while his girlfriend went to work. At all times, he had been engaged in his children's life and had provided financial support to them. Since his incarceration his parents have continued to provide financial and emotional support to their grandchildren. His parents and siblings have continued to support him. Photos of their visits while he has been incarcerated will be provided to the Court.

While he stands convicted of a serious offense, the murder of another human being, Juan Alberto Ortiz-Orellana was not involved in any of the multiple racketeering acts of robbery, extortion,

assaults, and witness intimidation that MS-13 allegedly committed.  He was not the driving force behind the murder, a government informant was.

While serving his time at the Bureau of Prisons, he has availed himself of educational opportunities.  His infractions have not been serious, especially for someone serving a life sentence. The allegation of possession of a sharp object is stale, dating back nearly 10 years.

With his background of steady employment and as a first offender creates, the life sentence that he is serving results in unwarranted disparity from the many MS-13 defendants who were not leaders and have been convicted of a single murder.  The life sentence resulted in large part from a trial-penalty. He had little involvement with MS-13 (as reflected in the jury verdict that he had not committed other racketeering activities).  The government theory of the case was that he had been jumped into the MS-13 gang the day before he was arrested in this case.  As a result, he had no information to provide the government to obtain a substantial assistance reduction as his codefendant charged with the murder of this particular victim, and as the clique leader and the MS-13 witnesses, many of whom were repeat offenders and held leadership positions within MS-13.  Under the facts of this case, had he pleaded guilty instead of exercising his 6th Amendment right to a jury trial, he would have been sentenced to a term of 20 years at most.

**CONCLUSION**

In sum, his the RICO offenses were a deviation from his otherwise hard working life, a grievous mistake for which he will serve the rest of his life behind bars. *See Ortiz-Orellana*, 90 F.4th at 705 ("the trial judge agreed that Ortiz had no criminal history and made a "terrible mistake" by getting involved with MS-13"). It is a tragedy all around, for the victim as well as for Mr. Ortiz-Orellana, who himself was victimized by the MS-13 leadership, including the clique leader, a long-time government informant who has committed multiple offenses. A concurrent one-day sentence is reasonable and complies with the statutory mandate in § 3553(a) that the Court impose a sentence, "sufficient, but not greater than necessary."

Respectfully submitted,

/s/ *Carmen D. Hernandez*

**Carmen D. Hernandez**
MD Trial Bar No. 03366
7166 Mink Hollow Rd
Highland, MD 20777
240-472-3391; 301-854-0076 (fax)

**CERTIFICATE OF SERVICE**

I hereby certify that a copy of the Motion was served via ECF this 13th day of April, 2026.

/s/ *Carmen D. Hernandez*
**Carmen D. Hernandez**